\* WILLIAM G. HAAS v. PERRY C. REMICK, AUD. ET AL.

1. ROSE COUNTY LOCAL OPTION ELECTION RENDERS INOPERATIVE AIKEN TAX LAW IN DRY COUNTY.

The Rose county local option law (99 O. L. 35), having been enacted subsequent to the Dow tax law (83 O L. 157) as amended by the Aiken law (98 O. L. 99), prevails in so far as their provisions are in conflict. Hence, acts 83 O. L. 157 and 98 O. L. 99, imposing a tax upon the business of trafficking in intoxicating liquors, is invalid and inoperative in dry counties.

\*Contra, *La Follette* v. *Murray,* 81 O. S. 475.

Ashtabula County.

**2. TAXATION OF LIQUOR BUSINESS CONDUCTED CONTRARY TO COUNTY LOCAL OPTION IS LICENSE PROSCRIBED BY CONSTITUTION.**

Taxation, as distinguished from license, can only be imposed upon a lawful business; to impose a tax upon the business of trafficking in intoxicating liquors as provided by act 98 O. L. 99, the right to carry on the business where located and ownership of such right in the party assessed must exist. Imposing a tax in counties having voted dry under act 99 O. L. 35 upon an unlawful liquor business savors of license and is unconstitutional.

**3 STATE PRECLUDED BY LOCAL OPTION ACTS OF COUNTY UNDER ROSE LAW FROM IMPOSING DOW TAX UPON UNLAWFUL LIQUOR BUSINESS THEREIN.**

Counties are component parts of the state and unlike municipalities which are but creatures of the state, in which state laws are not superseded by municipal ordinances, the state having authorized its constituent parts to prohibit the liquor business therein under a general law, such as act 99 O. L. 35, and to make such business criminal, the prohibitory acts of such component part is binding upon the state precluding the imposition of a tax thereon under an earlier conflicting general law.

**4. BOAT OF NONRESIDENT OF STATE UNLAWFULLY IMPRESSED BY ANOTHER IN LIQUOR BUSINESS NOT LIABLE TO DISTRAINT FOR LIQUOR TAX.**

A boat owned by a citizen of another state surreptitiously brought into this state and, without his knowledge or consent, used by another in the unlawful business of trafficking in intoxicating liquors in a dry county thereof, is not subject to distraint for taxes imposed by Sec. 4 of act 83 O. L. 157 and Sec. 2 of amendatory act 98 O. L. 99 against the person unlawfully appropriating it to such illegal uses, to do otherwise would be contrary to the doctrine of due process of law.

[Syllabus approved by the court.]

APPEAL from Ashtabula common pleas court.

**A. M. Cox,** for plaintiff:

Cited and commented upon the following authorities: *Adler* v. *Whitbeck,* 44 Ohio St. 539 [9 N. E. Rep. 672]; *Foley* v. *Roth,* 20 Dec. 157 (8 N. S. 425); *Commonwealth* v. *Dredging Co.* 122 Pa. St. 386 [15 Atl. Rep. 443; 1 L. R. A. 237; 9 Am. St. Rep. 116]; *Overby* v. *State,* 18 Fla. 178.

**F. R. Hogue** and **Perry. Hitchcock,** for defendant.

**LAUBIE, J.**

This case [*William G. Haas* v. *Perry C. Remick, Aud.* and *B. E. Thayer, Treas.*] is in this court on appeal.

The action was brought by the plaintiff to enjoin the defendants from enforcing the payment of a tax known as the Dow tax, as amended by the Aiken's statute (98 O. L. 99) imposed upon Wm. Doering for carrying on the traffic in intoxicating liquors on an electric power boat, or launch, in Ashtabula county, belonging to the plaintiff, and from selling said boat to satisfy such tax.

The tax was assessed for a year from May 24, 1909, in the sum of

Haas v. Remick.

$1,000, with $200 added thereto as penalty, as proscribed in Sec. 4 of such statute, and the plaintiff, in effect, alleged in his second amended petition that said county of Ashtabula then was, and still is, what is known as a "dry" county under what is known as the Rose law (99 O. L. 35); that therefore said Dow statute as amended was inoperative in and void as to such county, and was unconstitutional as to "dry" counties.

Plaintiff further alleged that he and said Doering were citizens and residents of the state of Pennsylvania; that he was the owner of said boat and had entrusted it to the care of said Wm. Doering, to be kept and used in the waters of Erie bay in Lake Erie in said state of Pennsylvania; that said Doering had surreptitiously, and without plaintiff's knowledge or consent, unlawfully taken and moved said boat from said Erie bay to Conneaut bay in said county of Ashtabula; that he did not authorize said Doering to sell liquor on said boat, and did not know that Doering was selling liquor on said boat, and that the defendants had levied upon, and are intending to sell said boat without notification of any kind to him, and refused to deliver it to plaintiff, and would sell the same if not restrained by order of the court.

To this petition the defendants filed a general demurrer, which was sustained by the court below, and plaintiff not desiring to further plead, judgment was rendered against him, and the case dismissed; and the plaintiff appealed the case to this court.

The defendants urge that the plaintiff is not entitled to the relief asked upon either of the claims set up in his petition, and assert that the Dow law is valid and operative in "dry" as well as in "wet" counties, and that under its provisions they have the right to sell the boat, wherein the traffic was carried on, without regard to its ownership, or notice to its real owner.

These are the propositions we are called upon to determine:

In its application, is the Dow tax law valid and operative as to, and in what is known as "dry" counties?

The question is thus limited as no one disputes its validity and operation in wet counties.

We do not think it is because, (1) it is in conflict with the local option statute commonly called and known as the Rose law, and (2) if valid and operative therein, it would amount to a license to sell intoxicating liquors, and be unconstitutional.

As to proposition No. 1: The local option statute—the Rose law—

was enacted years after the Dow law, and while the Dow law, as amended by the Aiken's statute, was in force and effect; and if their provisions are in conflict, the latter act prevails, and to the extent in which they conflict the former act is inoperative.

How is it in this case?

What is a tax?

A tax is an assessment levied yearly by the state upon property which the owner is required to list; and personal rights are property: as, for instance, the common law right to traffic in any lawful business.

The right to traffic in intoxicating liquors is a common law right possessed by the people—a property right, a lawful subject of taxation, and recognized as such in this state. To enforce payment of such tax in any such case against an individual, two facts must exist, viz., the right to carry on the business where located, and the ownership of such right in the party assessed; and when the state has lawfully abolished such right and ownership, how can it lawfully impose a tax thereon?

The state, in the Dow law, recognized those rights, and heavily taxed the persons engaged in the exercise of those rights; but now, through the enforcement of the Rose law, it has abolished those rights in most of the state, and made their exercise a misdemeanor.

We say the state has done this as the Rose law is a general law, applicable to the whole state, the state being composed of counties, and they are component parts of the state, and when the legislature authorized its constituent parts to abolish such rights, and made the exercise thereof a criminal offense against the state itself, certainly the abolition of such rights in any county is in effect the act of, and binding in every respect upon the state.

Suppose every county in the state was "dry" under the operation of the Rose law, where could the Dow law be in force and effect? Would not the Rose law render it inoperative and in effect repeal it? And if so why would it not have the same effect now in the "dry" counties, although all are not "dry."

In Ashtabula county at the time in question, and now, to engage in such traffic was and is a criminal offense against the state, and how is it possible that an older law could also be in force and effect there, which recognized and permitted the right in the people to carry on such traffic by the imposition of a yearly tax.

The statute expressly declares the tax is imposed upon the "business of trafficking in spirituous, vinous, malt or other intoxicating liquors," and hence it expressly recognizes the right to carry on such

Haas v. Remick.

business, and is a permit to do it, and this is made more manifest by the provision in the statute that if the party does not begin the traffic until after the day the yearly tax is to be assessed under the statute, to wit, the fourth Monday in May, the tax is to be apportioned accordingly; as for instance, if the traffic is not begun until six months after the fourth Monday of May, the tax is to be but one-half of the yearly tax; or, if such party began the business at the beginning of the year, and pays the tax, and afterwards retires from the business before the end of the year there shall be returned to him a proportionate share of such tax; but in no event shall the tax to be paid, or retained, be less than $200.

It is apparent, therefore, that the statute permits, and makes it lawful for such person to engage in and carry on such traffic for the length of time for which he pays the tax.

If, therefore, both these statutes are lawfully operative in a "dry" county, then the persons engaged in such traffic therein can be compelled to pay the tax and at the same time be prosecuted and fined for the selling, as Doering was in this instance, and all of their liquors taken from them and confiscated.

These statutes are, therefore, clearly in conflict and the latter one makes the former one inoperative in "dry" counties.

Conwell v. Sears, 65 Ohio St. 49 [61 N. E. Rep. 155], affirming the holding of this court in Harrison county, has no bearing upon this question. That arose in a municipality in respect of a prohibitory ordinance.

A municipality is but a creature of the state and not a component part of it like a county, and municipal ordinances do not prohibit the state from passing and enforcing laws in such municipality in regard to the same matters. This was formally determined years ago by the Supreme Court in Koch v. State. 53 Ohio St. 433 [41 N. E. Rep. 689], the syllabus of which is: "A former conviction before a mayor for the violation of an ordinance is not a bar to the prosecution of an information charging the same act as a violation of a statute."

The case of La Follette v. Murray, 81 Ohio St. 475, has no bearing upon the question in this case either, as the question involved in that case related solely to the sale of nonintoxicants—it being admitted by the treasurer that the beer sold was not intoxicating.

If the traffic in nonintoxicating beer is subject to the Dow tax, such traffic is not prohibited by the Rose law, and hence in that re-

spect the two acts are not in conflict, and the Dow law to that extent is in force and operative in "dry" counties, as the state has the right to impose a tax upon a business that is not unlawful.

But how is it as to intoxicants?

The tax is not upon articles of property and according to their value, but upon the right in a person to deal in them, a personal right only. How can the state compel a person to pay a tax on such a personal right when such a right is not owned by him, does not in fact exist, and the attempt to use it is a misdemeanor—an offense against the state.

This brings us to the second proposition, viz: If the Dow law is in force and operative in "dry" counties, does it not in effect operate as a grant of a license, instead of imposing a tax? If a license, it is of course unconstitutional, and the law void. It cannot be treated as a penalty, as the penalty is affixed by the later Rose law.

When and how can a tax become a license?

A tax becomes a license when imposed upon a traffic that is forbidden and unlawful; as a tax cannot be imposed upon a personal right which the people do not and cannot own, and the attempt to exercise which is a criminal offense. The Supreme Court has in effect so held.

In *State* v. *Hipp*, 38 Ohio St. 199, and *Butzman* v. *Whitbeck,* 42 Ohio St. 223, and *State* v. *Sinks,* 42 Ohio St. 345, it was held that: "The constitutionality of a statute depends upon its operation and effect, and not upon the form it may be made to assume," and in each case the statutes then in force, imposing a tax upon the traffic in intoxicating liquors, was held to be a license and void.

In *State* v. *Hipp,* supra, it was so held, by reason of the provision in the Pond law (79 O. L. 66), which required a person engaged in such traffic on the premises of another person to give a bond, which if he failed to give, or if the bond was forfeited, he should be deemed guilty of a misdemeanor, and fined or imprisoned, as the provisions of the statute took away the right to engage in such traffic on the premises of another person in effect, and then granted that right to those who would execute such bond.

In *Butzman* v. *Whitbeck;* supra, upon the same principle, the Scott law was held to be a license, as it provided that whoever engaged in, or continued in such traffic on land or premises not owned by him, without the consent of the owner, should be held guilty of a misdemeanor.

In *State* v. *Sinks,* supra, the court held that by reason of such

Haas v. Remick.

provision in the Scott law, it rendered the whole act unconstitutional and void.

In *State* v. *Frame,* 39 Ohio St. 399, and in *Adler* v. *Whitbeck,* 44 Ohio St. 539 [9 N. E. Rep. 672], and *Anderson* v. *Brewster,* 44 Ohio St. 576 [9 N. E. Rep. 683], these prior cases were referred to but not reversed.

In these six cases each decision was by a majority only, but all substantially agreed as to the definition of the word "license," and disagreed only as to its application to the statutes in question, under the facts in the cases.

In *State* v. *Frame, supra,* in the majority opinion, Judge McIlvaine, who united in the holding in *State* v. *Hipp, supra,* said, page 412:

"While there is no disposition on the part of the court to overrule the decision in that case, (the Hipp case). or to depart from the definition of a license as therein laid down, we find that there are fundamental differences between the two statutes in relation to provisions upon which this question depends."

On the same page he states, that the question of lien or license was not necessarily involved in that case, and that the court passed upon such questions merely because counsel had argued them.

In *Adler* v. *Whitbeck, supra,* in the opinion on pages 558, 559, 560, 561 and 562, the following appears:

"There seems, however, little difference of opinion as to the definition of a license. It is defined, in its general sense, by Okey, J., in *State* v. *Hipp,* [*supra*] as 'permission granted by some competent authority to do an act which, without such permission, would be illegal.' This agrees in substance with the definition as given in a number of other cases. * * * In *Chilvers* v. *People,* 11 Mich. 43, it is said: 'The object of a license is to confer a right that does not exist without a license.' 'The popular understanding of the word license undoubtedly is,' says Cooley, J., in *Youngblood* v. *Sexton,* 32 Mich. 406 [20 Am. Rep. 654], 'a permission to do something which without the license would not be allowed,' and he adds, 'this is also the legal meaning.' In *State* v. *Frame,* 39 Ohio St. 399, the language employed by McIlvaine, J., is somewhat different, but the definition is in substance the same. He says, 'A license is essentially the granting of a special privilege to one or more persons, not enjoyed by citizens generally, or, at least, not enjoyed by a class of citizens to which the license belongs. A common right is not the creature of a license.'

"The result of the definitions that have been given of a license is implied in its etymology, is in conformity to the sense in which the word is ordinarily used, and may be regarded as strictly accurate. That is permitted that cannot be done without permission; and to say that a person is permitted, licensed, to do what he may lawfully do without permission, is a misuse of words. * * *

"Every person has the right under the statute to rent property and engage in the business if he desires to do so. * * *

"As shown, the nature of a license is to create a right that did not exist and could not exist without the license. * * *

"In what way would the payment of the tax be a license to do what the individual had an *unbridled license to do before he paid it?*" (The italicizing is mine.)

In the later case, *Anderson* v. *Brewster, supra,* the tax was held not to be a license mainly upon the · ground that the traffic was *not prohibited,* and was lawful whether taxed or not, the opposite of the question we have here.

In the majority opinion in that case, pages 587, 588 and 509, it is said:

"A license in law may be simply and well defined as a permission, but it is a permission given by some competent authority to do an act which, without the permission, would not be legal. * * *

"He enters upon the traffic in intoxicating liquors, without a license, and when found in the business the law *suffers it to continue,* but charged with the burden of a tax.

"The distinction is clearly recognized, between a license granted or required as a condition precedent before a certain thing can be done, and a tax assessed on a business which one is authorized to engage in. * * *

" 'The object of a license,' says Mr. Justice Manning, 'is to confer a right that does not exist without a license.' *Chilvers* v. *People,* 11 Mich. 43, 49. Within this definition, a mere tax upon the traffic cannot be a license of the traffic, unless the tax confers some right to carry on the traffic *which otherwise would not have existed.* We do not understand that such is the case here. The very act which imposed this tax *repealed the previous law, which forbade the traffic and declared it illegal.* The trade then *became lawful,* whether taxed or not; and this law, imposing the tax, did not declare the trade illegal in case the tax was not paid. * * * If the tax is paid, the traffic is *lawful;* but if not paid, the traffic *is equally lawful.* * * *

Haas v. Remick.

The state has provided for the taxation of a business which was *found in existence,* and the carrying on of which *it no longer prohibits."* (The italicizing is mine.)

Apply that ruling to this case, and how does it stand? Is the traffic lawful in "dry" counties whether the tax is paid or not; is it no longer prohibited by the state in such counties?

Under such ruling, the answers to these questions would conclusively show, that if the Dow tax is held to be legal and operative in such counties, it is a license instead of a tax.

No one can lawfully carry on such traffic in such parts of the state, without the permission of the state, and that permission is granted when the state allows one to carry on such traffic as long as he pays the tax.

This idea is borne out by the opinion expressed by Judge Mc-Ilvaine in *State* v. *Frame, supra,* commencing on page 413 where he says:

"The right to traffic in intoxicating liquors for the purpose of drinking, before the passage of the Scott law, was the common right of each and every citizen of the state. It so remained after its passage.
*  *  *
"The personal right to engage in the traffic *is not taken away* from any person." (The italicizing is mine.)

How was it in this instance when the tax was assessed against Doering? The right had been taken away from every person in that county. It was a criminal offense to exercise it, and he was arrested and paid a fine for doing it. A tax upon any traffic is upon the right of those engaged in it to carry it on—recognizing that right; but when that right is taken away by statute, if an older statute is held to be in force which allows the right to carry on the traffic as long as desired by the trafficker by paying the tax specified in such statute, certainly such tax is turned into a license, as such traffic could not then be carried on except under some authority from the state, and that authority would be in effect a license; and it is evident from the contrary opinions rendered in the cases cited, *supra,* that such would have been the holding of the courts in those cases, as those decisions were based in substance upon the sole ground that the common law right of the people to traffic in intoxicating liquors was not then forbidden and made unlawful by the state.

There is the further point to be considered, as presented by the plaintiff. Haas, the owner of the boat, is a citizen of the state of

Pennsylvania, and as it was brought here from that state unlawfully and without his consent and knowledge, and the traffic engaged in without his consent and knowledge, what right would the county or the state have to levy upon and sell it for a tax assessed upon another person, upon Doering, the man who had substantially stolen the boat?

What authority could there be in such a case to take that boat from this owner and sell it, and that, too, without any notice to him; without giving him any right to a hearing before a court or even before the treasurer?

It is claimed that by virtue of the authority granted in the statute, which provides for the collection of a tax in the case of a non-payment, that the treasurer

"Shall levy on the goods and chattels of such person, corporation or copartnership, wherever found in said county, or on the bar, fixtures or furniture, liquors, leasehold and other goods and chattels used in carrying on such business, which levy shall take precedence of any and all liens, mortgages, conveyances, or incumbrances hereafter taken or had on such goods and chattels, so used in carrying on such business; nor shall any claim of property by any third person to such goods and chattels, so used in carrying on such business, avail against such levy so made by the treasurer."

Now we do not doubt but what by the terms of the act itself the right was attempted to be taken away from any person who claimed to be the owner of the property upon which the sale was illegally made. That is substantially the wording of the act, and which it is claimed has to a certain extent been upheld by the Supreme Court in the cases heretofore referred to; but the question here is a new one; viz., is it a legal provision and effective as against a citizen of another state who claims the property in the manner claimed here by the plaintiff, that this boat was stolen from him substantially and brought into this state, and the traffic carried on without his knowledge or consent or approval in any way. Can this property be taken from him to pay the tax assessed against the man who stole the boat?

The constitution of the United States, we think, forbids this by the provision that no man's property shall be taken from him except by due process of law. By what due process of law is this property of the citizen of another state sought to be taken and sold for a tax assessed upon the man who unlawfully carried it off from such other state? It cannot be claimed for an instant, we think, that due process of law against the thief is due process against the owner. To satisfy those pro-

Haas v. Remick.

visions, the property can only be taken by due process of law against the owner in such a case as this. Otherwise what right has a citizen of another state to his property that has been surreptitiously and unlawfully taken from him and carried into this state.

But even as to citizens of the state, we think this question is fully settled in *Mirick* v. *Gims,* and *Sunday Creek Co.* v. *Woodworth,* 79 Ohio St. 174 [86 N. E. Rep. 880; 20 L. R. A. (N. S.) 42], under the provisions of our own constitution. In those cases the statute in question provided for the levy of a per capita tax upon dogs, and authorized the collection thereof by a sale of the real estate upon which the dogs may have been kept and harbored by a tenant; although the owner of such real estate, the lessor, had no knowledge thereof, and did not consent thereto; and which statute the court held to be inconsistent with the constitutional rights of such owner, and void.

In the opinion Judge Davis, on page 180, defines the question as follows:

"Thus the property of an innocent person may be taken without notice and without due process of law, to recompense an injury to another, committed by a third person who holds no relation to the landowner except that of tenant under a lease."

We think the doctrine of that case establishes the right of this plaintiff of itself to the relief asked, under the facts alleged in the petition, but we fully considered the prior questions herein, because counsel for defendants express the desire to file an answer if the demurrer is overruled, and there can be no issues of fact raised except as to those alleged in regard to this last point, which in no way could change the right of the plaintiff to such relief.

The demurrer is overruled.

**Metcalf, J.,** concurs.